Estate of Harriet Ankeny Watson, E. A. Mallaghan, Administrator and Trustee v. Commissioner. Estate of John D. Ankeny, Mary R. Ankeny and First National Bank of Walla Walla, Executors v. Commissioner.
Estate of Watson v. Commissioner
Docket Nos. 110399, 111288.
United States Tax Court
1944 Tax Ct. Memo LEXIS 357; 3 T.C.M. (CCH) 164; T.C.M. (RIA) 44052; February 25, 1944
*357 John F. Watson, Esq., Thomas P. Gose, Esq., 218 First Nat. Bank Bldg., Walla Walla, Wash., and Henry F. Moore, C.P.A., for the petitioners. Arthur L. Murray, Esq., for the respondent. HARRON Supplemental Memorandum Findings of Fact and Opinion HARRON, Judge: Originally, a memorandum findings of fact and opinion was entered in this proceeding on January 4, 1944. As set forth in that opinion, the question presented was whether payments received by petitioners in the taxable year from the liquidation of a national bank were taxable income to them. The payments were refunds to each petitioner of 20 percent of the principal amount of a bank stock assessment which had been paid by petitioners in prior years. Petitioners in their income tax returns for those years had claimed and were allowed deductions for the full amount of the assessments paid by them. In our original opinion, it was stated, inter alia, that the question of whether the refunds represented taxable income to petitioners in the taxable year depended upon whether or not each petitioner had received a full tax benefit from the allowance of the assessment as a deduction. It was held in Estate of John D. Ankeny, *358 (Docket No. 111288) that payment of the refund was not taxable income since petitioner had not received a full tax benefit from the deductions of the assessment in the prior years. In Estate of Harriet Ankeny Watson (Docket No. 110399), it was held that the refund received in the taxable year was taxable income since petitioner had received a full tax benefit from the deductions of the assessment in the prior years. On January 31, 1944, petitioner, Estate of Harriet Ankeny Watson, moved for a rehearing or reconsideration of the proceeding, asking that a finding of fact be made that the stock of the First Inland National Bank of Pendleton, Oregon, was not worthless in any year prior to 1940. The motion further asks that the refund received in the taxable year be applied against the original cost of the stock as a recovery of capital. Respondent, in his notice of deficiency, determined that the stock was worthless in 1932 when the bank was closed. Petitioner in its pleadings alleged that respondent had erred in that determination, and evidence was adduced on the question at the hearing. In our original findings of fact and opinion, it was not thought necessary to the determination *359 of the issue to make the finding requested by petitioner, but in view of the pleadings and the evidence, we are making supplemental findings of fact although no change in our original decision is made. However, the arguments advanced by petitioner are considered further in our supplemental opinion. Supplemental Findings of Fact On October 17, 1932, the First Inland National Bank was closed by proclamation of the mayor of the city of Pendleton, and on March 22, 1933, the Comptroller of the Currency of the United States appointed a conservator to direct the affairs of the bank. As of October 17, 1932, the bank had total assets of $6,582,178.67 and total liabilities of $4,390,486.65. On February 1, 1934, Charles Reynolds was appointed receiver of the bank and he continued in that capacity until November 19, 1938, when Raymond Elliott was appointed receiver. Elliott continued as receiver until September 1940, at which time all depositors and creditors of the bank had been paid in full. These payments included 6 percent interest on the deposits and claims. In September 1940, after all expenses of the receivership had been paid, Elliott turned over all of the bank's remaining assets to *360 petitioner, Ankeny who had been elected by the bank's stockholders to act as their agent in liquidating the remaining assets. The receiver's first quarterly report to the Comptroller of the Currency for the period ended September 30, 1934, classified the bank's assets as follows: Good
Doubtful
Worthless
Total
Total Assets at date of suspension,
Oct. 17, 1932
$2,363,542.06
$2,505,247.35
$1,713,389.26
$6,582,178.67
Total Assets as of Sept. 30, 1934
2,566,809.10
2,517,814.63
1,738,919.53
6,823,543.26
The report also showed the following amounts had been collected by the receiver: From good assets
$2,297,266.87
From doubtful assets
961,587.43
From worthless assets
85,334.71
From assessment on stockholders
154,281.06
From other collections
38,334.27
Total
$3,536,804.34
In his final report for the quarter ended June 30, 1940, the receiver reported total assets of $7,461,352.06, total liabilities of $4,390,486.65 and total collections of $4,836,265.46 as follows: Amounts
Collected by
Receiver
From good assets
$2,529,845.72
From doubtful assets
1,490,923.00
From worthless assets
423,345.28
From assessment on stockholders
391,800.14
From other collections
351.32
Total
$4,836,265.46
*361 The total assets turned over in September 1940 to petitioner Ankeny as agent for the bank's stockholders after the bank's depositors and creditors had been paid in full amounted to $1,738,326.06. At the date of the hearing, 70 percent of the stockholders' assessments had been repaid to them and there still remained for liquidation total assets in the sum of $1,420,905.95. During the taxable year, petitioner Ankeny was offered in cash the sum of $50 per share for his stock of the First Inland National Bank. The stock of the First Inland National Bank of Pendleton, Oregon, was not worthless during the years 1932 to 1940, inclusive. Supplemental Opinion We have found as a fact that the stock of the First Inland National Bank of Pendleton, Oregon, was not worthless in any of the years 1932 to 1940, inclusive. This determination is based primarily upon the records of the receiver of the bank, the testimony of Ankeny, now deceased, and the testimony of Elliott, a former receiver of the bank. Ankeny, who was a banker and the largest stockholder of the First Inland National Bank, testified that he never claimed a loss on the stock as the shares could not have been considered worthless *362 in any of the years since the bank closed. He further testified that during the taxable year he was offered $50 per share in cash for his stock. We think the record substantiates Ankeny's opinion that the stock could not have been considered worthless in 1932 or thereafter. Although the liquidation of the bank's assets has not yet been completed, the bank's depositors and creditors have been paid in full together with 6 percent interest on their deposits and claims. The costs and expenses of the receivership have also been fully paid. In addition, the stockholders have received payment of 70 percent of the assessment and there still remains over a million dollars of assets to be liquidated. Elliott, who had been assistant to the receiver in 1932 and receiver from 1938 until the receivership ended in 1940, testified that in view of the large margin of assets over liabilities in 1932 and in subsequent years, the stock could not have been considered worthless at any time. Respondent offered no evidence as to the worthlessness of the stock in 1932 other than the fact that the bank was closed in that year and a 100 percent stock assessment was subsequently levied upon the stockholders. *363 Under all the circumstances, it must be held that the stock was not worthless in 1932 or in the subsequent years. Petitioner contends that this finding disposes of the issue in that if the stock was not worthless prior to the taxable year, it had the right to credit the refund against the original cost of its stock rather than against the stock assessment. We think this contention must be rejected in this proceeding in view of the treatment on the income tax return of the deduction in the earlier year. In the final analysis, the question resolves itself to one of proper accounting by petitioners for a deduction taken and allowed in prior years. Cf. . Petitioner paid the assessment in 1935 and 1936 and deducted it on its returns for those years, receiving a full tax benefit from the deductions. In that respect, petitioner received a full return of the capital paid on the assessment since the deductions in the prior years had offset gross income for those years. Since the refund received in the taxable year was by its terms "20% of the principal amount of the assessment" and since that assessment no longer represented *364 capital, the refund constituted taxable income. The question in this proceeding would not have arisen if petitioner had not taken and been allowed deductions for the payment of the assessment in the prior years. We do not know upon what theory those deductions were taken but we assume they were allowed by respondent on the assumption that the bank stock was worthless in 1932. We think that the issue of the worthlessness of the stock is immaterial to the present proceeding. The issue here is whether there is a deficiency in income tax for the taxable year. Since the refund constituted taxable income for the reasons heretofore set forth, respondent is sustained on this issue. Accordingly, Decision will be entered under Rule 50.